IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **DWAYNE BALLARD,**<br><br>            Plaintiff,<br><br>     vs.<br><br>**THE KENAN ADVANTAGE GROUP, INC.,**<br><br>            Defendant. | Case No. 5:20-cv-1042<br><br>Magistrate Judge Kathleen B. Burke |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Now comes the Named Plaintiff, Dwayne Ballard, by and through counsel, and hereby moves the Court pursuant to Fed. R. Civ. P. 23 for preliminary approval of the class settlement, certification of a class for the purposes of settlement, and approval of form and manner of notice. A memorandum in support is attached hereto and incorporated herein.

                                                                       Respectfully submitted,

                                                                      COUNSELONE, P.C.

                                                          /s/ Justin Kachadoorian
Anthony J. Orshansky*
Alexandria R. Kachadoorian*
Justin Kachadoorian*
COUNSELONE, P.C.
9301 Wilshire Boulevard, Suite 650
Beverly Hills, CA  90210
Telephone:   310.277.9945
Facsimile:    424.277.3727
E-mail:  anthony@counselonegroup.com

alexandria@counselonegroup.com
justin@counselonegroup.com

∗ Admitted *pro hac vice*

Matthew A. Dooley (0081482)
Anthony R. Pecora  (0069660)
O'TOOLE, McLAUGHLIN,
DOOLEY & PECORA CO., LPA
5455 Detroit Road
Sheffield Village, Ohio  44054
Telephone:     (440) 930-4001
Facsimile:      (440) 394-7208
Email:            mdooley@omdplaw.com
                     apecora@omdplaw.com

*Counsel for Named Plaintiff*

## MEMORANDUM IN SUPPORT[1]

### STATEMENT OF FACTS

Dwayne Ballard ("Ballard") applied to work at The Kenan Advantage Group, Inc. ("KAG" or "Defendant") in or around late September 2017 as a truck driver. As part of its applicant screening process, KAG purchases consumer reports from consumer reporting agencies to investigate an applicant's criminal background and driving history. Ballard alleges that KAG fails to provide the mandatory disclosures required under the FCRA prior to obtaining consumer reports on remote trucking applicants under 15 U.S.C. § 1681b(b)(2)(B). Ballard alleges that KAG's online application materials include conflicting and misleading statements regarding KAG's use of consumer reports for employment purposes and an applicant's rights regarding these reports. Ballard also alleges that KAG took adverse action against some applicants based on these reports

---

[1] All defined terms shall have the same meanings used in the Stipulation of Settlement attached hereto as Exhibit A.

without providing adequate notice under the FCRA.

On October 17, 2018, Ballard filed a lawsuit in the Superior Court of the State of California, County of Los Angeles. The case was removed to the United States District Court for the Central District of California on November 29, 2018, and later transferred to the United States District Court for the Northern District of Ohio and styled *Dwayne Ballard v. The Kenan Advantage Group, Inc., et al.*, Case No. 5:20-cv-1042 ("Civil Action"). The Civil Action alleges that KAG violated the following provisions of the federal Fair Credit Reporting Act:

- 15 U.S.C. § 1681b(b)(2)(B) by failing to advise the applicant orally, in writing, or by electronic means of his or her right to a free copy of the report within 60 days and his or her right to dispute the accuracy or completeness of the report directly with the consumer reporting agency before procuring a consumer report; and

- 15 U.S.C. § 1681b(b)(3)(B) by failing to provide adverse action notice to truck driving applicants within 3 days of KAG's taking adverse action based in whole or in part on information contained in a consumer report.

The Civil Action seeks to recover statutory damages per consumer between $100.00 and $1,000.00, together with punitive damages, and attorneys' fees and costs. Ballard and putative Class Members are represented by Matthew A. Dooley and Stephen M. Bosak, Jr. of O'Toole, McLaughlin, Dooley & Pecora, Co., LPA and Justin Kachadoorian, Alexandria R. Kachadoorian and Anthony J. Orshansky of CounselOne, PC ("Class Counsel"). KAG is represented by Rod M. Fliegel, Chad J. Kaldor, and John W. Hofstetter of Littler Mendelson, P.C. and Michael A. Curley and Patricia A. McCausland of Curley Hurtgen & Johnsrud, LLP ("Defense Counsel"). At all relevant times, KAG has denied any wrongdoing in the Civil Action.

Following the filing of the Civil Action, the Parties engaged in formal and informal discovery, through which KAG provided Class Counsel with information concerning the applicants who were the subject of consumer reports during the Class Period and the documents used by KAG to obtain applicants' consumer reports. Class Counsel deposed KAG's corporate representative, and Defense Counsel deposed Ballard. The Parties participated in two (2) mediations: the first on May 14, 2019 before Jill R. Sperber, and the second on March 12, 2021 before Judge Diane M. Welsh (Ret.). Although the Parties were unable to resolve the dispute during mediation, they continued to work with Judge Welsh to ultimately reach the resolution described below. On May 28, 2021, the Parties executed a Memorandum of Understanding (the "MOU"), which memorialized the material terms of the Settlement.

## THE PROPOSED SETTLEMENT

The settlement provides money to Class Members who do not opt out, a service payment to Ballard, expenses advanced by Ballard's attorneys, claims administration expenses, and an attorneys' fee within the acceptable range for matters of this type. The salient terms are as follows:

- The maximum Common Fund that KAG may be required to pay is Nine Hundred Thirty-Eight Thousand and Sixty-Eight Dollars and No Cents ($938,068.00).

- From the Common Fund, the maximum gross amount of Four Hundred Ninety-Seven Thousand Five Hundred and Sixty-Eight Dollars ($497,568.00) shall be allocated to payments to the Disclosure Class. Members of the Disclosure Class do not have to submit a Claim Form to receive payment. After required deductions are made for Court-approved Settlement Administration Expenses, Attorneys' Fees, Attorneys' Expenses, and the Service Award to Named Plaintiff, a net portion of this amount shall be distributed to the members of the Disclosure Class on a pro rata basis.

- From the Common Fund, the maximum gross amount of Four Hundred Thirty Thousand Five Hundred Dollars ($430,500.00) shall be allocated to payments to the Adverse Action Class. To receive payment, members of the Adverse Action Class must submit a Claim Form. If fewer than 15% of the members of the Adverse Action Class submit a Claim Form, the Settlement Administrator

will determine the difference between the total amount that would have been paid to the members of the Adverse Action Class if 15% of them had submitted a Claim Form, on the one hand, and the amount actually paid to the members of the Adverse Action Class based on all claims submitted, on the other (the "Differential Amount"). The Differential Amount shall be used to pay the Settlement Administration Expenses to the extent the actual cost exceeds the Administrator's May 4, 2021 estimate of Twenty-Nine Thousand Nine Hundred and Ninety-Three Dollars ($29,993.00), and, if the Differential Amount is not thereby exhausted, sent to a mutually agreed upon *cy pres* recipient.

- The following classes are sought to be certified:

    The Disclosure Class, which includes: All persons residing in the United States: (1) who applied for a company driver position with Defendant described by 15 U.S.C. § 1681b(b)(2)(C) during the Class Period; (2) about whom Defendant procured a Consumer Report; and (3) whom Defendant did not hire.

    The Adverse Action Class, which includes: All persons residing in the United States: (1) who are members of the Disclosure Class; and (2) who are listed on KAG's Tenstreet tracking notes with at least one reference to "MVR," "DAC," "Speed" or "Fals."

- The parties agree to the appointment of O'Toole, McLaughlin, Dooley, & Pecora, L.P.A. and CounselOne, PC as counsel for the Class Members and that Class Counsel may petition the Court for attorneys' fees, recoverable from the Common Fund, up to the amount of Three Hundred Twelve Thousand Six Hundred and Eighty-Nine Dollars ($312,689.00).

- The parties agree that Ballard may petition the Court for a Service Award in the amount of Ten Thousand Dollars ($10,000.00). which will be paid from the Common Fund.

- Class Counsel may recover expenses of up to a maximum of twenty-five thousand dollars ($25,000) from the Common Fund, subject to the Court's approval.

- The expenses of claims administration will be paid from the Common Fund.

- The checks that the Settlement Administrator issues to Class Members from the Final Payable Amount shall be valid for 60 calendar days. To the extent any check is not deposited or cashed within 60 calendar days, that amount shall be remitted to a *cy pres* recipient approved by the Court.

**CLASS CERTIFICATION**

Federal Rule of Civil Procedure 23(a) requires that in order for a class action to proceed it must be demonstrated that:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

The Court must also find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Fed R. Civ. P. 23(b)(3); *Eisen v. Carlisle Jacquelin*, 417 U.S. 156 (1974).

The ultimate merits of Ballard's case are immaterial for purposes of certifying a settlement class so long as the settlement is fair, adequate, and reasonable.  Fed. R. Civ. P. 23(e)(2); *see, e.g.*, *Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008).  Regardless, the Court should resolve any doubt regarding the propriety of certification of a settlement class in favor of allowing certification. *Lozada v. Dale Baker Oldsmobile, Inc.*, 197 F.R.D. 321, 327 (W.D. Mich. 2000) (citing *Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1026, 1029 (6th Cir. 1977)).

Further, "[t]he procedural device of a Rule 23(b)(3) class action was designed not solely as a means for assuring legal assistance in the vindication of small claims but, rather, to achieve the economies of time, effort, and expense." *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1196 (6th Cir. 1988). District courts must conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met before certifying a class. *General Telephone Co. v. Falcon,* 457 U.S. 147, 161 (1982). While the Court must conduct a rigorous analysis as to whether the standards of Rule 23 are met, the elements of typicality, commonality, and adequacy of representation tend to merge. *E.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 n.5 (2011).

### A.	Numerosity

Civil Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see Violette v. P. A. Days, Inc.*, 214 F.R.D. 207, 212 (S.D. Ohio 2003). However, "impracticable does not mean impossible." *Rabidoux v. Celani,* 987 F.2d 931, 935 (2d Cir. 1993). There is no set minimum number of potential class members that fulfills the numerosity requirement. *See, e.g.*, *Miller v. Univ. of Cincinnati*, 241 F.R.D. 285, 288 (S.D. Ohio 2006).

At this time, the Parties estimate that the Settlement Classes consist of approximately 10,366 Class Members in the Disclosure Class and approximately 1,572 Class Members in the Adverse Action Class. Both classes encompass a class period of October 17, 2016 to January 31, 2019. The sheer size of this class is sufficiently large to determine that numerosity has been satisfied and joinder of these Class Members' claims is not possible.

### B.	Common Questions of Law or Fact

Civil Rule 23(a)(2) requires that there be at least one question of law or fact common to the members of the class. *In re American Med. Sys.,* 75 F.3d 1069, 1080 (6th Cir. 1996). The class must present dispositive common questions that will propel the case through the system. *Powers v. Hamilton Cnty. Pub. Defenders Comm'n.*, 501 F.3d 592, 619 (6th Cir. 2007) ("The predominance requirement is met if this common question is at the heart of the litigation."). The typicality and commonality requirements ensure that only those plaintiffs who can advance the same factual and legal arguments will be grouped together as a class. *See Sprague v. General Motors Corp.,* 133 F.3d 388, 399 (6th Cir. 1998) ("The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class.").

Here, the Settlement Classes consists of those individuals who, with respect to the Disclosure Class, all persons residing in the United States: (1) who applied for a company driver position with Defendant described by 15 U.S.C. § 1681b(b)(2)(C) during the Class Period; (2) about whom Defendant procured a Consumer Report; and (3) whom Defendant did not hire, and with respect to the Adverse Action Class, all persons residing in the United States: (1) who are members of the Disclosure Class; and (2) who are listed on KAG's Tenstreet tracking notes with at least one reference to "MVR," "DAC," "Speed" or "Fals."  Each of these Class Members were the subject of consumer reports, were entitled to all requisite disclosures under 15 U.S.C. § 1681b(b)(2)(B), and had provide valid consent before KAG procured consumer reports on them for employment purposes. Moreover, each member of the Adverse Action Class needed to be given notice by KAG within three business days that adverse action had been taken based in whole or in part on a consumer report and needed to be provided with the contact information of the consumer reporting agency and notice of his or her right to a free copy of the consumer report and of his or her right to dispute its accuracy with the consumer reporting agency. The Class Members' claims share predominant questions of law judged against common facts, all of which predominate over individual issues.

### C. Typical Claims

Civil Rule 23(a)(3) requires that the claims of the named plaintiff be typical of the claims of the class. The typicality requirement tends to merge with the commonality requirement. *E.g.*, *Falcon*, 457 U.S. at 158, n.13. Nonetheless, the typicality requirement remains its own separate inquiry, and a class representative must be part of the class and possess the same interest and suffer the same injury as the class members. *Calloway v. Caraco Pharmaceutical Laboratories, Ltd.*, 287 F.R.D. 402, 407 (E.D. Mich. 2012) (citing *Falcon*, 457 U.S. at 156; *Sprague*, 133 F.3d at 399

8

(stating that this third prerequisite is satisfied when "the representative's interests [are] aligned with those of the represented group, and in pursing his own claims, the named plaintiff will also advance the interests of the class members.")).

The typicality requirement is met if a claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quotation marks omitted) (quoting *American Med. Sys.*, 75 F.3d at 1082).

Ballard's claims arise from KAG's common practice to obtain background reports for employment purposes. Ballard did not he receive a compliant notice that KAG would procure a consumer report on him or did not provide his authorization for KAG to do so. Moreover, KAG did not hire Ballard based on information contained in his consumer report but did not notify him that adverse action has been taken based in whole or in part on a consumer report, nor tell him that he had the right to request a free copy of the report within 60 days and could dispute the accuracy or completeness of any information in the report. KAG used similar standard forms to obtain authorization from applicants that did not comply with the FCRA's disclosure requirements.  As a matter of companywide policy, KAG declined to hire applicants based on information contained in consumer reports but did not provide the required adverse action notice described above. Ballard thus presents claims that are typical of the claims held by each Class Member.

### D. Adequate Representation

The final component of Rule 23(a) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "Adequate representation" invokes two inquiries: (1) whether the class counsel are "qualified, experienced and generally able to conduct the litigation" and (2) whether the named plaintiffs themselves are capable of advancing

9

the class claims or have interests that are "antagonistic" to the other class members. *See Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000). A class representative must be part of the class and possess the same interest and suffer the same injury as the class members. *East Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (citations omitted); *American Med. Sys.*, 75 F.3d at 1083 ("The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members.").

The underlying premise of a class action is that litigation by representative parties adjudicates the rights of all class members, and therefore, basic due process requires that named plaintiffs possess undivided loyalties to absent class members. *Id.* ("Rule 23(a)(4) allows certification only if the representative parties will fairly and adequately protect the interests of the class. This prerequisite is essential to due process, because a final judgment in a class action is binding on all class members.") (citations and internal quotations omitted). Representation will be considered adequate if the class representative does not possess interests antagonistic to the rest of the class. *Stout*, 228 F.3d at 717 ("The court reviews the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation, and to consider whether the class members have interests that are not antagonistic to one another.")

Ballard understands and accepts his responsibilities as class representative and has no interests that are adverse to the Class Members. Further, Ballard and the Class Members sought uniform statutory damages as the result of KAG's alleged violations of the FCRA. There is no potential for conflicting interests in this action; there is no disagreement between Ballard's interests and those of the Class Members.

At the same time, Class Counsel are experienced in class action litigation and are competent to represent the interests of the Class. *See White v. CRST, Inc*., Case No. 1:11-cv-2615 (N.D. Ohio); *Hall v. Vitran Express, Inc*., Case No. 1:09-cv-00800 (N.D. Ohio) (approved as Class Counsel in a nationwide class action under the FCRA); *Ryals v. HireRight Solutions, Inc*., *et al,* Case No. 3:09-CV-625 (E.D. Va.) (same); *Smith v. New England Motor Freight, Inc.,* Case No. 2:12-CV-03559 (N.J.D) (same); *Roe, et al. v. Intellicorp Records, Inc., et al.,* Case No. 1:12-CV-02288 (N.D. Ohio) (same); *Avery v. Boyd Bros. Transportation*, Case No. 4:13-CV-00579 (W.D. Missouri) (same); *Smith v. ResCare¸* Case No. 3:13-CV-5211 (S.D. W. Va.) (same); *Henderson, et al. v. First Advantage,* Case No. 3:14-CV-00221 (E.D. Va.) (same); *Henderson, et al v. BackgroundChecks.com*, Case No. 3:13CV-00029 (E.D. Va.) (same). Equally important, Class Counsel have no conflict with the Class.

### E. Rule 23(b)(3) Factors

#### 1. Predominance

Civil Rule 23(b)(3) requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members. *American Med. Sys*., 75 F.3d at 1084 ("[Rule 23](b)(3) parallels subdivision (a)(2) in that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues."). The predominance requirement tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997).

Here, the "common nucleus of operative fact" is rooted in KAG's procedure to obtain and use consumer reports to evaluate job applicants. The process was standardized. The same forms were used to obtain allegedly invalid authorizations from applicants and the same process resulted

in applicants allegedly failing to receive copies of their background reports. The same standardized process also resulted in KAG making decisions regarding hiring based on consumer reports. The predominant issues relate exclusively to whether: (1) KAG's conduct was uniform as to the Class Members, and (2) the relative culpability of KAG's conduct. Courts routinely certify claims that arise from standard form contracts and standardized conduct.[2] This principle applies equally in the realm of FCRA class actions like this one.[3]

There are no other questions that require individual review, or that would otherwise shift the Court's focus away from this fundamental core set of common issues.

**2. Superiority**

The Court must also determine whether a class action is superior to other methods for the fair and efficient adjudication of the controversy under Fed. R. Civ. P. 23(b)(3). *Windsor*, 521 U.S. at 615 ("In adding 'predominance' and 'superiority' to the qualification-for-certification list, the Advisory Committee sought to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated,

---

[2] *See Allapattah Services, Incorporated v. Exxon Corporation*, 333 F.3d 1248, 1261 (11th Cir. 2003) (certifying breach of contract claims where "all of the dealer agreements were materially similar and Exxon purported to reduce the price of wholesale gas for all dealers"); *Smilow v. Southwestern Bell Mobile Systems*, 323 F.3d 32, 39-42 (1st Cir. 2003) (certifying breach of contract claim based on standard form mobile phone contract and alleged breach thereof in charging for incoming calls); *Zeno v. Ford Motor Company*, 238 F.R.D. at 183; *Steinberg v. Nationwide Mutual Insurance Company*, 324 F.R.D. 67, 79 (E.D. N.Y. 2004) (certifying breach of contract claim involving materially similar automobile insurance contract and a Nationwide's common practice of taking "betterment" deductions on claims under those insurance contracts); *Winkler v. DTE, Inc.* 205 F.R.D. 235, 243 (D. Ariz. 2001) (certifying breach of contract claim based on standard purchase contracts of used car dealer and overcharges of official registration fees); *Kliener v. First National Bank of Atlanta,* 97 F.R.D. 683, 692 (N.D. Ga. 1983) ("claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such.") (citations omitted).

[3] *Reardon v. ClosetMaid Corp.*, 2011 U.S. Dist. LEXIS 45373 (W.D. Pa. Apr. 27, 2011); *Williams v. LexisNexis Risk Mgmt.*, 2007 U.S. Dist. LEXIS 62193 (E.D. Va. Aug. 23, 2007); *Summerfield v. Equifax Info. Services LLC*, 264 F.R.D. 133, 136 (D.N.J. 2009); *Chakejian v. Equifax Information Services*, LLC, 256 F.R.D. 492 (E.D Pa. 2009); *Perry v. FleetBoston Financial Corp.*, 229 F.R.D. 105 (E.D. Pa. 2005); *Gillespie v. Equifax Info. Services, LLC*, 05 C 138, 2008 WL 4614327 (N.D. Ill. Oct. 15, 2008).

without sacrificing procedural fairness or bringing about other undesirable results.'") (citing Advisory Committee notes for the 1966 revision of Rule 23); *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 186 (S.D. Ohio 2012) ("A matter may be certified under Rule 23(b)(3) when common issues of fact and law predominate and the class mechanism is superior to other methods of relief."). The factors to be considered in determining the superiority of the class mechanism are: (1) the interest in controlling individual prosecutions; (2) the existence of other related litigation; (3) the desirability of concentrating the litigation in the forum; and (4) manageability. *Olden v. LaFarge Corp.*, 383 F.3d 495, 507-08 (6th Cir. 2004).

Class actions are particularly appropriate where multiple lawsuits would not be justified because of the small amount of money sought by the individual plaintiffs. *Carroll v. United Compucred Collections, Inc.*, 399 F.3d 620, 625-26 (6th Cir. 2005) (quoting *Windsor*, 521 U.S. at 617).Thus, the class mechanism permits a large group of claimants to have their claims adjudicated in a single lawsuit. In so doing, certification enables the court to manage a large number of small and medium sized claims where the costs of discovery and trial could easily prevent any adjudication of those claims, and preclude any relief to the class. *See Lozada v Dale Baker Oldsmobile Inc.*, 197 F.R.D. 321, 332-33 (W.D. Mich. 2000) (citations omitted).

The amount in controversy for any individual claimant in this class is small as the range of statutory damages is between $100 and $1,000. *See* 15 U.S.C. § 1681n. When compared to the costs of discovery and litigation, this potential recovery pales in comparison. As such, individual Class Members do not possess any controlling interest in the litigation. Likewise, the absence of any competing classes or other individual claims suggests that without class certification, it is unlikely that the Class Members would obtain any form of relief. *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 345 (7th Cir. 1997).

13

Because the Court is confronted with a request for settlement-only certification, it "need not inquire whether the case, if tried, would present intractable management problems." *Amchem Prods.*, 521 U.S. at 620. The names and current addresses of Class Members are readily obtainable from employment records maintained by KAG. Accordingly, settlement is proper so long as the Court finds that the settlement overall is fair, reasonable, and adequate to Class Members. Fed. R. Civ. P. 23(e); *see, e.g.*, *Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008).

## PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT

Finally, the Court must conclude that the proposed settlement is the product of legitimate, good faith negotiation, such that notification of the class is justified:

> As part of Rule 23(e)'s "fairness, reasonableness, and adequacy" inquiry the court must first determine whether the terms of the proposed settlement warrant "preliminary approval." *See* Fed. R. Civ. P. 23(e)(1)(B)-(C). Preliminary approval is a two-step process. See *In re IPO Litig.*, 226 F.R.D. at 191; *In re Nasdaq Antitrust Litig.*, 176 F.R.D. at 102 (citing Fed. R. Civ. P. 23(e); Manual for Complex Litigation (Third) § 30.41 (1995)). First, the court "make[s] a preliminary evaluation of the fairness of the settlement." *In re Nasdaq Antitrust Litig.*, 176 F.R.D. at 102. Thus, "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representative or segments of the class and falls within the reasonable range of approval, preliminary approval is granted." *Id.* (citing Manual for Complex Litigation (Third) § 30.41 (1995)); accord *In re IPO Litig.*, 226 F.R.D. at 191.FN7. Upon preliminary approval, the court "must direct the preparation of notice of the certification of the settlement class, the proposed settlement and the date of the final fairness hearing." *In re IPO Litig.*, 226 F.R.D. at 191. At the fairness hearing, "[c]lass members (and non-settling defendants whose rights may be affected by the proposed settlement) then have an opportunity to present their views of the proposed settlement, and the parties may present arguments and evidence for and against the terms, before the court makes a final determination as to whether the proposed settlement is 'fair reasonable, and adequate.'" *Id.* (citing Manual for Complex Litigation (Fourth) § 21.632-21.635 (2004)).

*Bourlas v. Davis Law Assoc.*, 237 F.R.D. 345, 355 (E.D.N.Y. 2006). The preliminary approval process should not constitute a trial of the case on the merits, rather only a determination that the settlement is not the result of overreaching or collusion:

> In making a preliminary assessment of the fairness of the proposed settlement agreement, the Court's "intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982), cert. denied, 459 U.S. 1217, 103 S.Ct. 1219, 75 L.Ed.2d 456 (1983). A preliminary fairness assessment "is not to be turned into a trial or rehearsal for trial on the merits," for "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Id.* Rather, the Court's duty is to conduct a threshold examination of the overall fairness and adequacy of the settlement in light of the likely outcome and the cost of continued litigation. *Ohio Public Interest Campaign v. Fisher Foods, Inc.*, 546 F. Supp. 1, 7 (N.D. Ohio 1982).
>
> As part of this evaluation, the Court may not second guess the settlement terms. *See Armstrong v. Board of School Directors of City of Milwaukee*, 616 F.2d 305, 315 (7th Cir. 1980) ("[j]udges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel"); *Officers for Justice*, 688 F.2d at 625 ("[t]he proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators").Moreover, when a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair. *Vukovich*, 720 F.2d at 923; *see Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 68 (D. Mass. 1997) ("[i]n general, a settlement arrived at after genuine arm's length bargaining may be presumed to be fair"); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 176 F.R.D. 158, 184 (E.D. Pa. 1997) ("[s]ignificant weight should be attributed 'to the belief of experienced counsel that settlement is in the best interest of the class'") (internal citations omitted).

15

*In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 350-51 (N.D. Ohio 2001). Here, the proposed settlement was the result of three years of hard-fought litigation, which included contested law-and-motion practice, extensive discovery, expert consultations, and two mediations before different mediators. Moreover, the proposed settlement is fair and reasonable because each Class Member is guaranteed to receive a monetary recovery as part of the Disclosure Class without having to do anything, whereas a smaller subset of Adverse Action Class Members are eligible to receive an additional payment upon the submission of a timely and valid claim form. The recovery for all Class Members is especially fair given KAG's defenses to liability, certifiability, and damages, and the substantial costs to both sides and the Court to proceeding through certification, trial, and appeals.

## CONCLUSION

The proposed Settlement Classes meet the requirements of Fed. R. Civ. P. 23(a) and (b)(3), and the proposed Settlement is product of non-collusive, arm's-length negotiations by sophisticated counsel. The Settlement achieves a beneficial outcome to all Settlement Class Members in the face of significant defenses to liability, certification, and damages, and is fair, reasonable, and adequate. Therefore, Ballard respectfully requests that the Court certify this action as a class action for settlement purposes and preliminarily approve the proposed Settlement of this matter as set forth in the Stipulation of Settlement together with the manner and form of notice provided for therein.

Respectfully submitted,

COUNSELONE, P.C.

/s/ Justin Kachadoorian
Anthony J. Orshansky\*
Alexandria R. Kachadoorian\*

>Justin Kachadoorian∗
>9301 Wilshire Boulevard, Suite 650
>Beverly Hills, CA  90210
>Telephone:      310.277.9945
>Facsimile:      424.277.3727
>E-mail:anthony@counselonegroup.com
>           alexandria@counselonegroup.com
>           justin@counselonegroup.com
>
>∗ Admitted *pro hac vice*
>
>Matthew A. Dooley (0081482)
>Anthony R. Pecora  (0069660)
>O'TOOLE, McLAUGHLIN,
>DOOLEY & PECORA CO., LPA
>5455 Detroit Road
>Sheffield Village, Ohio  44054
>Telephone:      (440) 930-4001
>Facsimile:      (440) 394-7208
>Email:          mdooley@omdplaw.com
>                apecora@omdplaw.com
>
>*Counsel for Named Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that I have, on this 23rd day of August 2021, electronically filed Plaintiff's Unopposed Motion for Preliminary Approval of Proposed Class Settlement using the CM/ECF system, which automatically sends email notification to the attorneys of record.

/s/ Justin Kachadoorian
Justin Kachadoorian
*Counsel for Named Plaintiff*