# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **DWAYNE BALLARD, on behalf of himself and all others similarly situated,** | |
| Plaintiff, | CASE NO.  5:20-CV-1042 |
| vs. | |
| **THE KENAN ADVANTAGE GROUP, et al.,** | UNITED STATES MAGISTRATE JUDGE CARMEN E. HENDERSON |
| Defendants. | |

## PLAINTIFF'S UNOPPOSED[1] MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT, AWARD OF ATTORNEY FEES AND LITIGATION EXPENSES, AND SERVICE PAYMENT TO PLAINTIFF

Plaintiff Dwayne Ballard moves the Court under Fed. R. Civ. P. 23 for an order granting final approval of the class action settlement, awarding a service payment to Ballard, awarding Class Counsel's requested fees and costs, and approving the administration of the settlement. A memorandum in support is attached and incorporated herein.

Respectfully submitted,

O'TOOLE, McLAUGHLIN, DOOLEY & PECORA CO., LPA

/s/ Matthew A. Dooley
Matthew A. Dooley (0081482)
Stephen M. Bosak (0092443)
5455 Detroit Road
Sheffield Village, Ohio 44054
Telephone:    (440) 930-4001
Facsimile:    (440) 394-7208
Email:        mdooley@omdplaw.com
              sbosak@omdplaw.com
*Class Counsel*

---

[1] The relief requested herein is consistent with the terms of the Parties' Stipulation of Settlement (Doc. 90-2).

i

# TABLE OF CONTENTS

I.    Overview ................................................................................................ 1

II.   The Settlement Notice Process should be approved by the Court. ......................................... 2

III.  The Settlement is fair, reasonable, and adequate, and the Court should grant final approval. ................................................................................................ 5

   A.  The Settlement was negotiated at arm's length, and there is no risk of fraud or collusion. ................................................................................................ 7

   B.  The Complexity, Expense, Duration, and Risks of Continued Litigation and the Likelihood of Success on the Merits. ................................................................. 7

   C.  Class Counsel and the Class Representative have adequately represented the Class and recommend that the Settlement is approved. The absent Class Members do not object. ..... 10

   D.  The proposed plan of distribution is reasonable, and all class members are treated the same. ................................................................................................ 10

   E.  The public interest weighs in favor of settlement. ............................................. 10

IV.  The Court should approve the requested service payment and Class Counsel's requested fees and costs. ................................................................................................ 12

   A.  Mr. Ballard's requested payment for his service as class representative is reasonable. ... 12

   B.  The Court should award Class Counsel attorney's fees and litigation expenses from the common fund. ................................................................................ 13

   C.  Class Counsel's requested reimbursement for litigation expenses should be approved... 17

V.   CONCLUSION ...................................................................................... 17

# TABLE OF AUTHORITIES

## Cases

*Adcock-Ladd v. Secretary of Treasury*
    227 F.3d 343, 350 (6th Cir. 2000)……………………………………………………………..16

*Bailey v. Great Lakes Canning, Inc.*,
    908 F.2d 38 (6th Cir. 1990) .................................................................................................. 5

*Ball v. Kasich*,
    No. 2:16-cv-282, 2020 WL 1969289 (S.D. Ohio Apr. 24, 2020) ..................................... 11, 12

*Ball v. Kasich*,
    2:16-CV-282, 2020 WL 3050241, at *3 (S.D. Ohio June 8, 2020)……………………………16

*Brian A. v. Hattaway*
    83 Fed. Appx. 692, 695 (6th Cir. 2003)…………………………………………………………15

*Carr v. Bob Evans Farms, Inc.*,
    No. 1:17-cv-7508650, 2018 WL 7508650 (N.D. Ohio July 27, 2018) .................. 13, 14, 15, 17

*Ceccone v. Equifax Info. Servs. LLC*,
    No. 13-cv-1314, 2016 WL 5107202 (D.D.C. Aug. 26, 2016) ..................................................... 4

*Doe v. Ohio*,
    No. 2:91-cv-464, 2020 WL 728276 (S.D. Ohio Feb. 12, 2020) ...................................... 6, 7, 10

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ................................................................................................................ 4

*Franks v. Kroger Co.*,
    649 F.2d 1216 (6th Cir. 1981) .............................................................................................. 3, 5

*Gascho v. Global Fitness Holdings LLC*
    822 F.3d 269, 290 (6th Cir. 2016)……………………………………………………………..10

*Granada Invs., Inc. v. DWG Corp.*,
    962 F.2d 1203 (6th Cir. 1992) ............................................................................................. 5, 11

*Hadix v. Johnson*,
    322 F.3d 895 (6th Cir. 2003) .................................................................................................. 12

*Hainey v. Parrot*,
    617 F. Supp. 2d  (S.D. Ohio 2007) ........................................................................................... 7

iii

*In re Automotive Parts Antitrust Litig.*, No. 12-MDL-02311,
  2016 WL 8200511 (E.D. Mich. Aug. 9, 2016) .......................................................... 4

*In re Automotive Parts Antitrust Litig.*, No. 12-MDL-02311,
  2020 WL 5653257 (E.D. Mich. Sept. 23, 2020) ..................................................... 12

*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003) ............................................................... 8, 10, 11

*In re Online DVD-Rental Antitrust Litig.*
  (9th Cir. 2015) 779 F.3d 934, 944-945……………………………………………..10

*In re Packaged Ice Antitrust Litig.*,
  No. 08-MDL-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) .............................. 10, 11

*In re Packaged Ice Antitrust Litig.*,
  No. 17-2137, 2018 WL 4520931 (6th Cir. May 24, 2018) ....................................... 6

*In re Serzone*,
  231 F.R.D. 221 (S.D. W. Va. 2005) ..................................................................... 4, 11

*In re Sulzer Hip Prosthesis & Knee Prosthesis Liability Litig.*,
  268 F. Supp. 2d 907 (N.D. Ohio 2003) ............................................................... 14

*In re Telectronics Pacing Sys.*,
  137 F. Supp. 2d 985 (S.D. Ohio 2001) ................................................................. 7

*In re Zurn Pex Plumbing Prod. Liab. Litig.*, No. 08-MDL-1958,
  2013 WL 716008) (D. Minn. Feb. 27, 2013) ........................................................ 4

*Int'l Union UAW v. Gen Motors Corp.*,
  497 F.3d 615 (6th Cir. 2007)............................................................................. 6

*Johnson v. Midwest Logistics Sys., Ltd.*,
  No. 2:11-cv-1061, 2013 WL 2295880 (S.D. Ohio May 24, 2013) .......................................... 13

*Kirchner v. Shred-it USA Inc.*
  No. 2:14-CV-01437-WBS(EFB) (E.D. Cal. Mar. 31, 2015)……………………………...……9

*Levell v. Monsanto Research Corp.*,
  191 F.R.D. 543 (S.D. Ohio 2000) ....................................................................... 5

*Lonardo v. Travelers Indem. Co.*,
  706 F. Supp. 2d 766 (N.D. Ohio 2010) ............................................................... 5

*Louisville Black Police Officers Org. v. City of Louisville*
  700 F.2d 268, 277-78 (6th Cir. 1983)……………………………………………………16

*Maher v. Zapata Corp.*,
714 F.2d 436 (5th Cir. 1983)................................................................................ 5

*Marcum v. Dolgencorp*
No. 3:12-CV-00108 (E.D. Va. Oct. 16, 2014)…………………………………………..9

*Owner-Operator Independent Drivers Assn., Inc. v. Arctic Express, Inc.*,
No. 97-cv-750, 2016 WL 5122565 ............................................................ 12, 13, 14

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) ........................................................................................... 3

*Physicians of Winter Haven LLC v. Steris Corp.*,
No. 1:10-cv-264, 2012 WL 406966 (N.D. Ohio Feb. 6, 2012)............................... 13

*Pollard v. Remington Arms Co., LLC*,
320 F.R.D. 198 (W.D. Mo. 2017) ........................................................................ 11

*Ramey v. Cincinnati Enquirer, Inc.*,
508 F.2d 1188 (6th Cir. 1974)............................................................................ 14

*Reed v. Rhodes*,
179 F.3d 453 (6th Cir. 2008)............................................................................. 13

*Rodriguez v. Chuck E. Cheese's*
No. 3:14-CV-00677 JLS (JLB) (S.D. Cal. Dec. 14, 2015)………………………………9

*Safeco Ins. Co. of Am. v. Burr*
551 U.S. 47, 59-60 (2007)…………………………………………………………………8

*Salinas v. U.S. Xpress Enter., Inc.*,
No. 1:13-cv-245, 2018 WL 1477127 ................................................................. 13

*Schumacher v. AK Steel Corp. Ret. Acc. Pension Plan*,
995 F.Supp.2d 835, 847 (S.D. Ohio 2014)…………………………………………….16

*Sheick v. Automotive Component Carrier LLC*,
No. 2:09-cv-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010) ........................ 8

*Smith v. LexisNexis Screening Solutions, Inc.*,
No. , 2015 WL 9459724 (E.D. Mich. Dec. 28, 2015)......................................... 17

*Speer v. Whole Foods Market Group, Inc.*
No. 8:14-CV-03035-RAL-TBM (M.D. Fla. Oct. 9, 2015)…………………………….9

*Spokeo, Inc. v. Robins*
136 S. Ct. 1540, (2016)……………………………………………………………………9

v

*Townsend v. AIM Logistics, Inc.*,
   No. 4:15-cv-493, 2016 WL 8193582 (N.D. Ohio May 12, 2016) ........................................... 13

*Townsend v. Sterling Jewelers*
   No. 1:13-CV-3903 (N.D. Ill. Sept. 15, 2014)……………………………………………...8, 9

*Transunion v. Ramirez*
   141 S. Ct. 2190 (2021)……………………………………………………………………….8

*Van Horn v. Nationwide Prop. & Cas. Ins. Co.*,
   No. 1:08-CV-605, 2010 WL 1751995 (N.D. Ohio Apr. 30, 2010)......................................... 15

*Williams v. Vukovich*,
   720 F.2d 909 (6th Cir. 1983)...................................................................................................... 10

**Statutes**

15 U.S.C. § 1681(b)(2)……………………………………………………………………….9

15 U.S.C. § 1681b(b)(2)(C) ......................................................................................................... 1

15 U.S.C. § 1681n............................................................................................................... 8, 14

15 U.S.C. § 1681n(a)(3)............................................................................................................... 17

**Rules**

Fed. R. Civ. P. 23.................................................................................................................. i, 5

Fed. R. Civ. P. 23(e)(2)......................................................................................................... 6, 11

Rule 23(b)(3)......................................................................................................................... 2, 4

Rule 23(c)(2) ............................................................................................................................. 2

Rule 23(c)(2) and 23(e)............................................................................................................. 2

Rule 23(c)(2)(B)......................................................................................................................... 4

Rule 23(e) ........................................................................................................................ 2, 3, 5, 6

Rule 23(e)(2)…………………………………………………………………………..6, 11

Rule 23(e)(3) .............................................................................................................................. 6

**Other Authorities**

Federal Judicial Center, *Manual for Complex Litig.* § 21.312 (4th 2004)………………………..3

Herbert Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002)........................................... 5

## MEMORANDUM IN SUPPORT[2]

### I.    Overview

Mr. Ballard and Class Counsel seek final approval for this FCRA class action settlement, which the Court preliminarily approved on September 10, 2021. (Doc. 94). The settlement is made on behalf of individuals who applied for a company driver position with Defendant Kenan Advantage Group ("KAG") but were not ultimately hired. In short, KAG agreed to establish a maximum fund of $938,068.00 to pay (1) Class Members in accordance with the terms of the settlement, (2) the cost of notice and administration, (3) attorney fees and litigation expenses, and (4) a service payment to Mr. Ballard.

The case was originally filed on October 17, 2018, in the Superior Court of the State of California, and was immediately removed to the United States District Court for the Central District of California. After an initial mediation was unsuccessful, the Parties agreed to transfer the matter to this Court on May 13, 2020. From the beginning, this case was vigorously litigated by all parties as KAG consistently denied liability and forcefully defended against Mr. Ballard's claims. However, with the assistance of Judge Diane M. Welsh (Ret.), the Parties were able to reach an accord that resolves all claims with meaningful cash payments to Class Members.

The salient terms of the settlement are set forth in Plaintiff's Unopposed Motion for Preliminary Approval (Doc. 90) and the Stipulation (Doc. 90-2), which describes the allocation of up to $938,068.00 to pay each member of the following two classes:

a.  The **Disclosure Class,** which includes:

All persons residing in the United States: (1) who applied for a company driver position with Defendant described by 15 U.S.C. § 1681b(b)(2)(C)

---

[2]All defined terms shall have the same meaning used in the Stipulation of Settlement (Doc. 90-2).

during the Class period; (2) about whom Defendant procured a Consumer Report; and (3) whom Defendant did not hire.

b. The **Adverse Action Class,** which includes:

All persons residing in the United States: (1) who are members of the Disclosure Class; and (2) who are listed on KAG's Tenstreet tracking notes with at least one reference to "MVR," "DAC," "Speed" or "Fals."

(Doc. 90-2, at ¶ 2.1). Members of the Adverse Action Class were instructed to file a claim no later than November 14, 2021, which confirmed that the Class Member had not affirmatively withdrawn his or her job application. This straightforward inquiry was intended to ensure that such Class Members were most likely denied employment due to adverse information in a consumer report, and not because they chose to accept other employment.

Following the Court's preliminary approval order, the Settlement Administrator, American Legal Claims Services LLC (ALCS), engaged in a robust notice process designed to provide the best practicable notice to the Class Members. It reached over **94%** of the **10,611** combined Class Members via regular or electronic mail and received only **three** opt-outs and **zero** objections (**Ex. A, Salhab Decl. at ¶¶ 11-16**).

## II.    The Settlement Notice Process should be approved by the Court.

In class actions certified under Rule 23(b)(3),[3] notice must meet the requirements of Rule 23(c)(2) and 23(e). Rule 23(e) specifies that no class action may be dismissed or compromised without court approval, preceded by notice to the class members. Rule 23(c)(2) requires that notice to the class must be "the best practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2). The Rule also requires that the notice inform potential class members that: (1) they have an opportunity to opt out; (2) the judgment will bind all class members who do not opt out; (3) and any member who

---

[3] Unless otherwise noted, all references to "Rule" mean the Federal Rules of Civil Procedure.

does not opt out may appear through counsel. *Id.* The Court must consider the mode of dissemination and the content of the notice to assess whether such notice was sufficient. *See* Federal Judicial Center, *Manual for Complex Litig.* § 21.312 (4th 2004). Rule 23(e) gives the Court "virtually complete" discretion as to the manner of service of settlement notice. *E.g.*, *Franks v. Kroger Co.*, 649 F.2d 1216, 1222-23 (6th Cir. 1981); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812-13 (1985) (direct notice satisfies due process).

To accomplish class notice, KAG provided ALCS with a spreadsheet containing the names, mailing addresses, and email addresses, if available, of 10,611 Class Members (the "Class List"). (*Id.*, at ¶ 4). For records that were missing an email address, ALCS utilized the National Change of Address system through the United States Postal Service ("USPS"), skip-tracing, and manual updates from class members and class counsel to locate the most current address and identifying information for the Class Members. (*Id.*) All mailing addresses were also certified via the Coding Accuracy Support System to ensure the accuracy of the zip codes and verified through Delivery Point Validation to verify the accuracy of the address. (*Id.*) The final Class List included 10,611 individuals. (*Id.*). Of these, the Settlement Administrator was ***unable*** to locate a valid mailing or email address for 580 individuals. (*Id.*).

For those class members who had a valid address, the Settlement Administrator provided the approved Class Notice (Docs. 93-1 through 93-6) via regular mail or electronic mail. (*Id.*, at ¶¶ 5-11). Any Class Notice that was returned with a forwarding address was remailed to the appropriate address. If no forwarding information was provided, the Settlement Administrator used commercially reasonable means to locate current address information and attempted a second mailing. (*Id.*). The Settlement Administrator confirmed delivery of the notice by regular mail to 1,378 Class Members and by electronic mail to 8,653 Class Members. (*Id.*, at ¶ 11) In total, the

3

Settlement Administrator reached **94.54%** of the Class. (*Id.*).

In addition to the direct mailing plan, the Settlement Administrator also established a toll-free telephone assistance hotline and a settlement website (www.kagclassaction.com) (*id.* at ¶ 12-13), which provided important information about the terms of the settlement, frequently asked questions, key dates, and offered a means to submit a claim form electronically. *See* https://www.kagclassaction.com/auth/eclaimverify/NDcx (last visited February 15, 2022).

Courts routinely approve direct notice plans that reach at least 80% of the class. *In re Serzone*, 231 F.R.D. 221, 236 (S.D. W. Va. 2005) (approving notice program where direct mail portion reached 80% of class members); *see also Ceccone v. Equifax Info. Servs. LLC*, No. 13-cv-1314, 2016 WL 5107202, at *8 (D.D.C. Aug. 26, 2016) (approving direct notice plan with 87% delivery rate) (citing *In re Zurn Pex Plumbing Prod. Liab. Litig.*, No. 08-MDL-1958, 2013 WL 716008) (D. Minn. Feb. 27, 2013) (approving notice plan that reached 80.6% of class). The Parties' multi-faceted plan, which combined direct and electronic notice, provided the best notice practicable under the circumstances. *See In re Automotive Parts Antitrust Litig.*, No. 12-MDL-02311, 2016 WL 8200511, at *3 (E.D. Mich. Aug. 9, 2016) (approving notice plan that included direct notice via regular and electronic mail).

The Class Notice also provided the Class Members with a clear and concise statement of their rights under Rule 23(c)(2)(B). (*See* Doc. 90-2, Ex. B-H); *see In re Automotive*, 2016 WL 8200511, at *9 ("The purpose of notice in a class action is to 'afford members of the class due process, which, in the context of the Rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment.'") (*quoting Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974)). Thus, the Class Notice process

4

meets the strictures of Rule 23 and due process, and it should be approved by the Court.

**III.  The Settlement is fair, reasonable, and adequate, and the Court should grant final approval.**

It is well settled that the law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of prolonged litigation. *Franks*, 649 F.2d at 1224; *see also* Albert Conte & Herbert Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002) ("By their very nature, because of the uncertainty of outcome, difficulties of proof, length of litigation, class action suits lend themselves readily to compromise.") Recognizing that complex litigation can be "notoriously difficult and unpredictable," in the absence of "fraud or collusion," settlements in complex litigation are not to be disturbed. *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) (quoting *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983)).

Class settlement approval is a three-step process. *E.g.*, *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 547 (S.D. Ohio 2000) (citing cases). First, the Court must preliminarily approve the proposed settlement. Second, the class members must be given notice of the proposed settlement. And third, the Court must determine whether the proposed settlement is "fair, adequate, and reasonable" to the class. *Id.* The Court has preliminarily approved the Settlement and the Class Members have received notice. The determination of whether to grant final approval for the Settlement is left to the sound discretion of the Court. *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 778 (N.D. Ohio 2010) (citing *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990)).

In evaluating whether a class action settlement is fair, reasonable, and adequate under Rule 23(e), courts in the Sixth Circuit consider the following factors:

(1) The risk of fraud or collusion; (2) the complexity, expense, and likely duration

of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*In re Packaged Ice Antitrust Litig.*, No. 17-2137, 2018 WL 4520931, at *6 (6th Cir. May 24, 2018) (quoting *Int'l Union UAW v. Gen Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). The most important factor "is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Id.* (quotations omitted).

The 2018 amendments to Rule 23(e) also contain specific factors for federal courts to consider in determining whether a class action settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2). These factors include:

- whether the class representatives and class counsel have adequately represented the class;

- whether the proposal was negotiated at arm's length;

- whether the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class including the method of processing class member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

- whether the proposal treats class members equitably.

*Id.* These amendments are not intended to "displace" the factors developed by the Sixth Circuit, "but rather focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.* at *Advisory Committee's Note to 2018 amendment*. Thus, courts in this Circuit consider both sets of factors when assessing the reasonableness of a settlement. *Doe v. Ohio*, No. 2:91-cv-464, 2020 WL 728276, at *3 (S.D. Ohio Feb. 12, 2020). Regardless, the Court enjoys "wide discretion in assessing the weight and

6

applicability of these factors." *Id.* (quotations omitted).

**A. The Settlement was negotiated at arm's length, and there is no risk of fraud or collusion.**

Here, the Parties did not reach the settlement without protracted negotiations and contentious litigation. Prior to the settlement, the Parties exchanged substantial documents and information, took and defended depositions, and began dispositive motion practice.[4] Against this backdrop, the Parties were able to reach an agreement only with the assistance of Judge Diane Welsh (Ret.) serving as mediator, and even then, negotiations spanned many weeks. *See* https://www.jamsadr.com/welsh/ (last visited February 15, 2022); *Hainey v. Parrot*, 617 F. Supp. 2d 688, 673 (S.D. Ohio 2007) ("The participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties.") Thus, there is no risk of fraud or collusion, and these factors weigh in favor of final approval. *See Doe*, 2020 WL 728276, at *4 ("The Parties' litigation history, including extensive discovery, indicates that the Settlement Agreement reflects a good faith compromise, not an act of collusion or fraud.")

**B. The complexity, expense, duration, and risks of continued litigation and the likelihood of success on the merits.**

"[S]ettlements avoid the costs, delays, and multitude of other problems" inherent in complex class action litigation. *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001). Here, despite the extensive discovery, there were still several obstacles before this case could be litigated to completion, including most notably KAG's pending Motion for Partial Judgment on the Pleadings (Doc. 79), which attacked the core of Mr. Ballard's claims, as well as disputes over the scope of third-party discovery, expert investigation into KAG's applicant-

---

[4] For this reason, the third *UAW* factor weighs in favor of final approval.

tracking software, and potentially Class Member sampling. Indeed, Mr. Ballard's likelihood of success on the merits is uncertain given the evolving case law interpreting the notice requirements to commercial truck drivers under the federal FCRA. Further, the class action mechanism is regularly the subject of litigation reaching the United States Supreme Court, where new limitations on certification are at issue. *See Transunion v. Ramirez*, 141 S. Ct. 2190 (2021) (holding that some class members lacked standing to bring claims under the FCRA because they did not suffer a concrete injury).

If Mr. Ballard survived dispositive motion practice, he must still prevail on class certification and at trial, which could be years away. *See In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003) (noting that "the prospect of trial necessarily involves the risk that Plaintiffs would obtain little or no recovery.") There, Mr. Ballard must also prove that KAG acted willfully in the context of the alleged FCRA violations in order to trigger an award of statutory damages. 15 U.S.C. § 1681n; *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 59-60 (2007) (willful failure to comply with the FCRA can be established by a knowing or reckless violation of the statute). The Parties' settlement provides instant and tangible relief to the Class and eliminates the risk of continued litigation and the potential that Class Members would receive no relief at all. *Sheick v. Automotive Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958, at *18 (E.D. Mich. Oct. 18, 2010) ("Absent settlement, all Class Members would be subject to the uncertainty, risk, hardship, and delay attendant to continued litigation, which ultimately might leave them with absolutely nothing.")

For example, Disclosure Class Members are entitled to a gross payment of $48.00 before a deduction of any attorney fees, costs, and administration expenses, which is consistent with class recoveries in FCRA disclosure claims. See, e.g., *Townsend v. Sterling Jewelers*, No. 1:13-CV-

3903 (N.D. Ill. Sept. 15, 2014) (approving $50 net payment per class members who did not receive disclosure forms); *Marcum v. Dolgencorp,* No. 3:12-CV-00108 (E.D. Va. Oct. 16, 2014) (approving $53.00 net payment per class members who received inadequate disclosure); *Kirchner v. Shred-it USA Inc.*, No. 2:14-CV-01437-WBS(EFB) (E.D. Cal. Mar. 31, 2015) (approving $45.55 payment per class members who received a disclosure form that included a liability release); *Rodriguez v. Chuck E. Cheese's*, No. 3:14-CV-00677 JLS (JLB) (S.D. Cal. Dec. 14, 2015) (approving a $36.00 net payment per class members who receive a disclosure containing extraneous information); *Speer v. Whole Foods Market Group, Inc.*, No. 8:14-CV-03035-RAL-TBM (M.D. Fla. Oct. 9, 2015) (approving $24.00 net payments per class members who receive a disclosure containing a liability waiver). After the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, (2016), disclosure claims under 15 U.S.C. § 1681b(b)(2) have been under regular attack by defendants who argue that plaintiffs do not suffer a concrete injury despite a clear statutory violation. For that reason, such claims are best resolved prior to any adverse motion practice that may defeat any recovery altogether.

Perhaps most importantly, Adverse Action Class Members who submitted claims will receive a gross amount of $287.00 in addition to their pro rata share of the fund allocated to the Disclosure Class. This is significant because those individuals are receiving almost three times the minimum statutory damage award of $100.00 if Mr. Ballard had successfully proven that KAG acted willfully at trial. Moreover, these individuals have verified that they suffered a job loss due to KAG's use of a derogatory consumer report and are thus receiving a more significant recovery. Given the considerable expense and duration of continued litigation, and the risk that Mr. Ballard will not be successful on the merits, these factors weigh in favor of final approval.

**C. Class Counsel and the Class Representative have adequately represented the Class and recommend that the Settlement is approved. The absent Class Members do not object.**

Mr. Ballard and Class Counsel have protected the interests of the Class throughout the litigation and have negotiated a fair and reasonable settlement on their behalf. The Sixth Circuit recognizes that "the court should defer to the judgment of experienced counsel who have competently evaluated the strengths of [their] proofs." *Doe*, 2020 WL 728276, at *6 (quoting *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983)). Here, Class Counsel have extensive experience in class action litigation and are well qualified to conclude that this settlement is fair and reasonable given the substantial risks of continued litigation. (**Ex. B**, **Dooley Decl. ¶¶ 10-11**) (**Ex. C, Kachadoorian Decl. ¶¶ 4, 5**).

The absent Class Members have not voiced any opposition to the proposed settlement. Only three Class Members have opted out, and no one objected. (**Ex. A, Salhab Decl., at ¶¶ 14, 16**). The absence of any significant objection militates towards final approval. *In re Cardizem*, 218 F.R.D. at 527 ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.") Likewise, although the claims rate of 5.16% is lower than Mr. Ballard would have hoped, it is consistent with the claims rate in other consumer class actions and does not evidence that the settlement is not fair, adequate, and reasonable. *See Gascho v. Global Fitness Holdings LLC*, 822 F.3d 269, 290 (6th Cir. 2016) (affirming class action settlement and noting evidence showing that claims rates for class actions generally range from 1 to 12 percent); *In re Online DVD-Rental Antitrust Litig.* (9th Cir. 2015) 779 F.3d 934, 944-945 (approving settlement where less than 4% of class members submitted claims; "settlements have been approved where less than five percent of class members file claims"); *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, at *14 (E.D.

Mich. Dec. 13, 2011) ("Although the number of responses filed represents just under 1% of the total number of Notices mailed, this ratio is not dispositive and is frequently less than 5%."); *see also Pollard v. Remington Arms Co., LLC*, 320 F.R.D. 198, 215 (W.D. Mo. 2017) (recognizing that "the claims rate does not govern whether settlement is fair, reasonable, or adequate" and citing cases granting final approval for claims rates below 1%); *In re Serzone*, 231 F.R.D. at 236 ("the adequacy of the notice is measured by whether notice reached Class Members and gave them an opportunity to participate, not by actual participation.")[5] These factors, therefore, weigh in favor of approving the class settlement.

### D. The proposed plan of distribution is reasonable, and all Class Members are treated the same.

The final Rule 23(e)(2) factors look to whether class members are treated equitably relative to each other in the distribution of any settlement funds. Here, the Parties negotiated a pro rata distribution to those Class Members in both the Disclosure and Adverse Action classes. Any unclaimed funds after payment of settlement administration costs, attorney fees, and a service payment will be distributed to a *cy pres* beneficiary to be approved by the Court. Thus, where the Class Members are treated equally, these factors weigh in favor of final approval.

### E. The public interest weighs in favor of settlement.

Lastly, the Court must consider the public interest in approving the settlement. "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem*, 218 F.R.D. at 530, *quoting Granada*, 962 F.2d at 1205. "The public has a similar interest 'in ending long and protracted litigation.'" *Ball v. Kasich*, No. 2:16-cv-282,

---

[5] The current pandemic, which has severely disrupted the lives of millions of Americans, also likely played a role in the lower claims rate.

2020 WL 1969289, at *9 (S.D. Ohio Apr. 24, 2020) (citations omitted). Approval of the settlement here brings closure to a multi-year class action lawsuit, conserves the time and resources of the Court, and provides meaningful relief to Class Members. Put simply, the public interest is served by granting final approval.

## IV.    The Court should approve the requested service payment and Class Counsel's requested fees and costs.

### A.    Mr. Ballard's requested payment for his service as class representative is reasonable.

Service payments are typically given to the class representative for their extensive involvement in the class action and are left to the sound discretion of the district court. *E.g.*, *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). The Parties agreed that Mr. Ballard could seek a service payment of $10,000 from the common fund for his service as the sole class representative. (Doc. 90-2, ¶ 7.3). This award reflects his extensive participation and diligent work in assisting Class Counsel's prosecution of this class action. *In re Automotive Parts Antitrust Litig.*, No. 12-MDL-02311, 2020 WL 5653257, at *5 (E.D. Mich. Sept. 23, 2020) ("Awards encourage class members to become class representatives and reward their efforts taken on behalf of the class. Payment of incentive awards to class representatives is a reasonable use of settlement funds.")

Mr. Ballard was the "tip of the spear" in this litigation, which included participating in the preparation of the pleadings and discovery, preparing for and sitting for a deposition, and being available during mediation conferences. (**Ex. D, Ballard Decl. ¶¶ 9-15**). Further, and despite personal setbacks, Mr. Ballard maintained constant communication with Class Counsel regarding the status of the case and was always available in service of the class. (*Id.*). Accordingly, the Court should award him $10,000.00 as a service payment for his role as the class representative, which is typical of awards within this Circuit and District. *See Owner-Operator Independent Drivers*

*Assn., Inc. v. Arctic Express, Inc.*, No. 97-cv-750, 2016 WL 5122565, at *7 (awarding two class representatives $25,000 each); *Physicians of Winter Haven LLC v. Steris Corp.*, No. 1:10-cv-264, 2012 WL 406966, at *9 (N.D. Ohio Feb. 6, 2012) (awarding $15,000 incentive award); *Townsend v. AIM Logistics, Inc.*, No. 4:15-cv-493, 2016 WL 8193582, at *2 (N.D. Ohio May 12, 2016) (awarding $15,000 incentive payment).

**B. The Court should award Class Counsel attorney's fees and litigation expenses from the common fund.**

The Stipulation of Settlement provides that Class Counsel may request $312,689.00 for attorney fees and up to $25,000.00 for litigation expenses, both payable from the common fund. (Doc. 90-2, ¶ 7.2) The requested fee equals one-third of the common fund. Class Members were notified that Class Counsel would request this amount, and none voiced an objection to the requested fee. (*See supra*). Moreover, this percentage is consistent with other awards within this district and Circuit. *Salinas v. U.S. Xpress Enter., Inc.*, No. 1:13-cv-245, 2018 WL 1477127, at *7-8 (awarding 40% of common fund plus costs and expenses); *Owner-Operator*, 2016 WL 5122565, at *7 (awarding attorney's fees of one-third of settlement fund plus costs and expenses); *Townsend*, 2016 WL 8193582, at *3 (awarding attorney's fees and costs of one-third of the settlement fund); *Carr v. Bob Evans Farms, Inc.*, No. 1:17-cv-7508650, 2018 WL 7508650, at *5 (N.D. Ohio July 27, 2018) (Gwin, J.) (awarding attorney's fees of one-third of settlement fund plus costs and expenses); *Johnson v. Midwest Logistics Sys., Ltd.*, No. 2:11-cv-1061, 2013 WL 2295880, at *2 (S.D. Ohio May 24, 2013) (awarding attorney's fees and costs of one-third of settlement fund).

Importantly, an attorney's fee award must be reasonable. *Carr*, 2018 WL 7508650, at *3 (citing *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 2008). The Court has discretion to select either percentage-of-the-fund or the lodestar multiplier method, with the percentage-of-the-fund method being preferred for common fund cases. *Id.* at *4. Under the percentage-of-the-fund method, the

13

Court considers the *Ramey* factors: (1) the value of the benefit to the collection action; (2) society's interest in rewarding attorneys who achieve such benefits; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis; (5) the complexity of the litigation; and (6) the skill of the litigators on both sides. *Id.* (citing *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974).

Here, the Settlement created a $938,068 common fund for the benefit of the Class Members, which must be viewed against the backdrop of the limitations on Mr. Ballard's statutory damage claim. *See* 15 U.S.C. § 1681n (allowing statutory damages between $100 and $1,000 only if the plaintiff can prove that the defendant acted willfully or recklessly). Under the Settlement, Disclosure Class Members will automatically receive a payment regardless of whether they can prove that their consumer report played a role in KAG's hiring decision. And Adverse Action Class Members will receive a gross payment of $287.00 in addition to their pro rata share of the fund allocated to the Disclosure Class. The Class's recovery should also be viewed considering the substantial risks that Mr. Ballard would have been unsuccessful in the litigation, and the Class would receive no relief at all. Thus, Class Counsel's ability to achieve the Settlement here weighs in favor of their requested award of attorney's fees.

Society also "has a clear interest in encouraging counsel to litigate cases 'enabling claimants to pool their claims and resources to achieve a result they could not obtain alone.'" *Owner-Operator*, 2016 WL 5122565, at *7 (quoting *In re Sulzer Hip Prosthesis & Knee Prosthesis Liability Litig.*, 268 F. Supp. 2d 907, 936 (N.D. Ohio 2003)). Class Counsel undertook this litigation on a contingent fee basis, expending 786.95 hours and $16,466.27dollars in hard costs over a three and half years with no guarantee of success. *See Carr*, 2018 WL 7508650, at *4.

Class Counsel's skill and value provided, and the complexity of the litigation, also weigh

14

strongly in favor of the requested fee award. Both Class Counsel and KAG's Counsel are skilled litigators and expertly advocated on behalf of their clients. There can be no dispute that this litigation involved complex and novel legal issues that militate in favor of Class Counsel's requested fee. In total, Class Counsel's lodestar exceeds $393,000.00 reflecting over 786 hours with attorney's rates between $300-$450 and paralegal rates of $150 per hour, as well as rates ranging from $625-$745 for out-of-state counsel. (**Ex. B, Dooley Decl., at ¶ 12**) (**Ex. C, Kachadoorian Decl. at ¶ 8**).[6] The value of Class Counsel's services on an hourly basis weighs in Class Counsel's favor.

For the same reason, Class Counsel's requested fee is supported by the lodestar cross-check. Class Counsel's hourly rates, which are $150 for paralegals, $300 for associates, and $400-$450 for partners, are reasonable for this market and this type of litigation. *See Carr*, 2018 WL 7508650, at *5 (finding hourly rates ranging from $395 to $450/hour to be reasonable); *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, No. 1:08-CV-605, 2010 WL 1751995, at *4 (N.D. Ohio Apr. 30, 2010) (court approved rates ranging from $250-$450/hour for attorneys and $110-$150/hour for paralegals).

Throughout this case Mr. Ballard and the Class have also been represented by attorneys in Los Angeles, California, where this action was originally filed and litigated for more than a year and a half.[7] (**Ex. C, Kachadoorian Decl. ¶¶ 7-10, 12**). The hourly rates of Mr. Ballard's out-of-state attorneys are reasonable within the jurisdiction that CounselOne's attorneys typically practice and should be approved. (*Id.*) *See Brian A. v. Hattaway*, 83 Fed. Appx. 692, 695 (6th Cir. 2003) (affirming district court's approval of out-of-state attorneys' fees of more than double the local

---

[6] Although the Court is permitted to consider the rates where out-of-town counsel are located, discounting the rates in line with those regularly charged in the Northern District of Ohio still leads to a lodestar of approximately $305,000, which aligns with the requested fee.

[7] Similarly, KAG has been represented throughout the case by attorneys from San Francisco and New York.

rate in a contested fee application in class action and holding that the court may use the out-of-state lawyer's jurisdiction as the "relevant community" for fee-approval purposes); *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) (out-of-town lawyer's jurisdiction was "relevant community" for purpose of determining reasonableness of rates where defendant was responsible for practice out of state); *Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268, 277-78 (6th Cir. 1983) ("District courts are free to look to a national market, an area of specialization market or any other market they believe appropriate to fairly compensate particular attorneys in individual cases."); *see also Ball v. Kasich*, 2:16-CV-282, 2020 WL 3050241, at *3 (S.D. Ohio June 8, 2020) (in approving attorneys' fees as part of class action settlement, district court "went outside of the presumptively reasonable amounts only for its out of state counsel"); *Schumacher v. AK Steel Corp. Ret. Acc. Pension Plan*, 995 F.Supp.2d 835, 847 (S.D. Ohio 2014) (considering national scope of plaintiff's attorneys' practice as well as defendant's decision to also retain out-of-state counsel in determining reasonableness of fee). Even if CounselOne's hourly rates were discounted to reflect rates deemed presumptively reasonable in this District, however, Class Counsel's lodestar amount would still warrant approval of the requested fees.  (Kachadoorian Decl. ¶ 13.)

The total time spent litigating this case was divided among five attorneys and their paraprofessionals, all with experience in class action litigation. (**Ex. B, Dooley Decl., at ¶ 13**) (**Ex. C, Kachadoorian Decl. at ¶¶ 4, 5, 8, 11**). The extensive time put into the case reflects the vigorous advocacy from the Parties and does not include the full time spent by Class Counsel preparing the final approval papers or preparing for the final fairness hearing. It also does not contemplate the future time that Class Counsel will spend addressing Class Members' concerns after the settlement closes. (*Id.*)

16

**C. Class Counsel's requested reimbursement for litigation expenses should be approved.**

Class Counsel also seek reimbursement for their litigation costs as provided in the Stipulation of Settlement. (Doc. 90-2, at ¶ 7.2). "Many circuits – including this one – have found that an award of 'reasonable attorney fees' 'includes the authority to award those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client in the course of providing legal services.'" *Smith v. LexisNexis Screening Solutions, Inc.*, No. , 2015 WL 9459724, at *5 (E.D. Mich. Dec. 28, 2015) (citations omitted); *See also* 15 U.S.C. § 1681n(a)(3) (providing for the recovery of the "costs of the action, together with a reasonable attorney's fee as determined by the court.") Reimbursable expenses include "travel, reasonable photocopying, computer-assisted research, postage and courier-services" and other litigation related costs. *Id.*; *see also Carr*, 2018 WL 7508650, at *6.

Class Counsel's costs total $16,466.27, which is less than the amount stipulated in the settlement. (Doc. 90-2, ¶ 7.2); (**Ex. B, Dooley Decl. ¶ 14**) (**Ex. C, Kachadoorian Decl. ¶ 15**). Importantly, these costs include filing fees, deposition-related costs, legal research, document management and other discovery-related costs. (*Id.*) These expenses were reasonably incurred by Class Counsel during the litigation, and the Court should approve the requested reimbursement.

**V.    CONCLUSION**

For the foregoing reasons, Mr. Ballard and Class Counsel respectfully request the Court enter an Order finally approving the Stipulation of Settlement (Doc. 90-2), granting Mr. Ballard's requested service award of $10,000, granting Class Counsel's requested attorney's fees of $312,689.00 and reimbursing Class Counsel for its litigation expenses totaling $16,466.27.

///

17

O'TOOLE, McLAUGHLIN, DOOLEY
& PECORA CO., LPA

/s/      Matthew A. Dooley
Matthew A. Dooley (0081482)
Stephen M. Bosak (0092443)
5455 Detroit Road
Sheffield Village, Ohio 44054
Telephone:      (440) 930-4001
Facsimile:      (440) 394-7208
Email:          mdooley@omdplaw.com
                sbosak@omdplaw.com

Anthony J. Orshansky
Alexandria R. Kachadoorian
Justin Kachadoorian
COUNSELONE, P.C.
9301 Wilshire Boulevard
Suite 650
Beverly Hills, California 90210
Telephone:      (310) 277-9945
Facsimile:      (424) 277-3727
Email:          anthony@counselonegroup.com
                alexandria@counselonegroup.com
                justin@counselonegroup.com
*Class Counsel*